## BREDOW v LAND & CO

Docket No. 315219. Submitted June 10, 2014, at Grand Rapids. Decided October 30, 2014, at 9:05 a.m. Leave to appeal sought.

Gordon Joseph Bredow and Suzanne Bredow brought an action in the Kent Circuit Court against Land & Co., PRD Construction, Inc., and others, after Gordon was injured while on property owned or managed by defendants. Gordon was employed by a company that leased space on defendants' property. On December 26, 2008, Gordon and a coworker began to clear ice and snow from an area near the building's main entrance. Large icicles had formed on the building, and Gordon was attempting to remove some of them when a large amount of ice and snow fell from the roof, striking and injuring him. Gordon alleged that defendants' negligence had caused his injuries, and his wife, Suzanne, brought a claim for loss of consortium. Defendants moved for summary disposition. The court, Donald A. Johnston, J., treated the action as one sounding in premises liability and granted summary disposition in favor of defendants, concluding that the snow and ice on the roof constituted an open and obvious danger without any special aspects. Plaintiffs appealed.

The Court of Appeals *held*:

To state a claim in a premises liability action, the plaintiff must demonstrate that (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages. An individual's status as a trespasser, licensee, or invitee at the time of injury determines the duty the landowner owes to that person. Tenants are generally considered invitees of the landlord. But an individual's status as an invitee is subject to change during the visit to the premises if the individual exceeds the scope of his or her invitation. When an invitee fails to use the premises in the usual, ordinary, or customary way, he or she becomes a licensee. In this case, Gordon was an invitee when he entered the premises to go to work, but when he undertook the unsolicited act of clearing icicles from the building—a task unrelated to his work—he lost his status as an invitee and became a licensee. A landowner only owes a duty to a licensee to warn the

licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved. Because Gordon was a licensee, defendants owed him no duty of inspection or affirmative care to make the premises safe for his activities, but only were obliged to warn him of a hidden danger on the property involving an unreasonable risk of harm if Gordon did not know or have reason to know of the danger. The evidence established that Gordon knew of the danger, so defendants had no duty warn him of the hazard or safeguard him from the condition. The trial court properly granted summary disposition in favor of defendants.

Affirmed.

WHITBECK, J., concurring, agreed with the lead opinion and wrote separately only to address the dissent. The dissent would reverse because, although the hazard was open and obvious, the hazard may have been unreasonably dangerous. In prior caselaw discussing unreasonably dangerous hazards, our Supreme Court had in mind the severe nature of the danger to an innocent invitee, and it follows that the dangerous condition of the land must cause the plaintiff's injury for one to recover because a hazard was unreasonably dangerous. But in this case, Gordon by his own unsolicited actions caused the danger and his own injury. He was not an innocent victim of the accumulation of ice and snow on the roof.

RONAYNE KRAUSE, P.J., dissenting, disagreed with the majority that Gordon lost his invitee status merely because he departed from his formal job responsibilities, and concluded that the trial court erred by failing to consider whether the hazard that injured Gordon was unreasonably dangerous. An invitee may outstay his or her welcome on any given premises and thereby become a licensee or trespasser. However, in the cases relied on in the lead opinion, the plaintiffs all either did something they were not allowed to do or went somewhere they were not allowed to go. Nothing in the record in this case indicated that Gordon was not allowed to use the door or clear access to it. Rather, Gordon was attempting to depart the premises in the normal and customary manner, but was impeded by an alleged defect within that way. Finding that Gordon lost his status as an invitee works an unprecedented and unsupported restriction on who may be an invitee. The hazard in this case was open and obvious. A hazard that is open and obvious is generally left to the invitee to avoid on his or her own and is not part of the landowner's duty, but even if a hazard is open and obvious, a premises possessor may owe a duty to an invitee to protect the invitee from unreasonable risks of

harm, including dangers that are effectively unavoidable and those that pose an unreasonably high risk of severe harm. The evidence in this case indicated that the hazard was not effectively unavoidable because the employees could have used an alternative door to the building. The trial court, however, erred by failing to consider whether the hazard was unreasonably dangerous. Although an accumulation of ice and snow on a roof is not unreasonably dangerous per se, the trial court should have addressed the question whether the specific accumulation at issue in this case was unreasonably dangerous.

NEGLIGENCE — PREMISES LIABILITY — INVITEES — USUAL, ORDINARY, OR CUSTOMARY USE OF THE PREMISES.

In a premises liability action, an individual's status as a trespasser, licensee, or invitee at the time of injury determines the duty the landowner owed to that person; an individual's status as an invitee is subject to change during the visit to the premises if the individual exceeds the scope of his or her invitation; when an invitee fails to use the premises in the usual, ordinary, or customary way, he or she becomes a licensee.

*Speaker Law Firm* (by *Steven A. Hicks*) and *Allaben & Bandeen, PC* (by *John R. Allaben*), for plaintiffs.

*Hunt Suedhoff Kalamaros LLP* (by *Philip E. Kalamaros* and *Brad R. Pero*) for defendants.

Before: RONAYNE KRAUSE, P.J., and HOEKSTRA and WHITBECK, JJ.

HOEKSTRA, J. In this premises liability action, plaintiffs appeal by right the trial court's grant of summary disposition to defendants. Because we conclude that plaintiff Gordon J. Bredow[1] was injured while engaging in an activity on defendants' premises that was outside the scope of his invitation and that he must therefore be

---

[1] Because plaintiff Suzanne Bredow's sole claim is a derivative claim for loss of consortium, references in this opinion to "plaintiff" are to her husband, plaintiff Gordon J. Bredow.

classified as a licensee for whom defendants owed no duty to maintain the premises or to warn him of a known hazard, we affirm.

In December 2008, Ferguson Enterprises, a wholesale distributor of plumbing supplies and other items, employed plaintiff as a project manager in its pricing center. In this role, plaintiff explained that he worked "with data," creating spreadsheets and other tools to aid those individuals analyzing commodity and matrix pricing for the Midwest. The pricing center where plaintiff worked was located in a rented warehouse which was part of a facility owned and managed by defendants.

On December 26, 2008, plaintiff and a coworker, Greg Layton, acting on their own accord, undertook the task of clearing snow and ice from an area near the building's entrance. Plaintiff, in particular, began clearing large icicles that were hanging from the building's roof. As he did so, large amounts of snow and ice fell from the roof onto plaintiff, causing him serious injury.

Plaintiff lacked specific recollection of the events surrounding his injury and indicated that Layton would be best able to describe the incident. According to Layton's description, on the day in question, the "very thick" ice forming on the building's roof was of such a length that it almost reached the ground. Early in the day, the ground near the entrance of the building appeared clear, but, by afternoon, ice had begun to fall from the roof. Unsolicited, Layton and plaintiff attempted to remove this ice debris from the ground, including ice chunks somewhat smaller around than a bowling ball.

Plaintiff then began to attempt the removal of icicles hanging down from the building's roof. Layton explained that, just before plaintiff's injury, plaintiff was

using a "snow shovel to pry one of the icicles that were hanging from the building off of the building," at which time "snow and ice from on top of the roof came down with" the icicle. It was the snow and ice from on top of the roof that struck plaintiff, knocking him down and causing his injuries.

Layton noted that, as a matter of "common sense," the risk of falling ice posed a danger as evidenced by the ice on the ground. Recognizing this danger, Layton also indicated that, while plaintiff pushed on the icicles, Layton "was kind of edging back because it seemed dangerous so [he] didn't want to be near it." In Layton's opinion, the section of the roof near where plaintiff chose to strike the icicles could have come down at any time. Likewise, though plaintiff had few memories of the specific events surrounding his injury, he had previously seen snow and ice on the building's roof, and he had heard snow and ice falling off the building's roof before the incident in question. He also described the process of "push[ing]" or "clearing" the icicles, stating, "[Y]ou kind of push [the icicles] while you're looking up, so you don't I mean, you can image getting something that's dropping down and tipping over and teetering. It can be dangerous."

Sometime after sustaining his injury, plaintiff filed suit against defendants. Defendants later moved for summary disposition, which the trial court granted after determining that the snow and ice on the roof constituted an open and obvious danger without any special aspects. Plaintiff now appeals as of right.

A trial court's decision to grant a motion for summary disposition is reviewed de novo. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). In this case, the trial court considered materials outside the pleadings when granting summary disposition,

meaning that we review the decision as having been granted under MCR 2.116(C)(10). *Hughes v Region VII Area Agency on Aging*, 277 Mich App 268, 273; 744 NW2d 10 (2007). Summary disposition should be granted under MCR 2.116(C)(10) when "there is no genuine issue of material fact . . . ." *Id.* In determining whether a conflict in the evidence remains, the pleadings, affidavits, depositions, admissions and other evidence submitted by the parties must be viewed in the light most favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). A material question of fact remains when, after viewing the evidence in this light, reasonable minds could differ on an issue. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

The present case is clearly one of premises liability, meaning that plaintiff's injury arose from an allegedly dangerous condition on the land. *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 692; 822 NW2d 254 (2012). To state a claim of premises liability, a plaintiff must show the elements of negligence; that is, a plaintiff must demonstrate that "(1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Benton v Dart Props, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006).

In this case, we note that the parties focus their appellate arguments on the issues of proximate causation, and whether, for purposes of assessing defendants' duty, the danger in question was open and obvious, and, if so, whether the open and obvious danger had "special aspects." Before reaching the parties' arguments, under the particular circumstances of this case, we find it necessary to first decide plaintiff's status as an entrant

on defendants' property in order to ascertain the duty owed by defendants.[2] See *James v Alberts*, 464 Mich 12, 20; 626 NW2d 158 (2001) (recognizing that an individual's status as trespasser, licensee, or invitee determines the landowner's attendant duty). Specifically, the parties apparently operate under the assumption that plaintiff was an invitee at the time of his injury, but, for the reasons explained in this opinion, we have determined that plaintiff was, at best, a licensee at the time of his injury, and, for this reason, defendants owed plaintiff a reduced standard of care which did not include an affirmative obligation to make the premises safe for plaintiff or to warn him of the evident danger posed by knocking down icicles.

In Michigan, the duty owed by a landowner with respect to the conditions of his or her land depends on the category of person entering the land, i.e., whether the individual is a (1) trespasser, (2) licensee, or (3) invitee. *Id.* at 19. An explanation of the respective categories, and the attendant standard of care owed by a landowner, was provided in *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596-597; 614 NW2d 88 (2000), wherein the Court stated:

> A "trespasser" is a person who enters upon another's land, without the landowner's consent. The landowner owes no duty to the trespasser except to refrain from injuring him by "wilful and wanton" misconduct.
>
> A "licensee" is a person who is privileged to enter the land of another by virtue of the possessor's consent. A landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to

---

[2] Though the parties have not framed the matter this way, "addressing a controlling legal issue despite the failure of the parties to properly frame the issue is a well understood judicial principle." *Mack v Detroit*, 467 Mich 186, 207; 649 NW2d 47 (2002).

know of the dangers involved. The landowner owes no duty of inspection or affirmative care to make the premises safe for the licensee's visit. Typically, social guests are licensees who assume the ordinary risks associated with their visit.

The final category is invitees. An "invitee" is "a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make [it] safe for [the invitee's] reception." The landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards. Thus, an invitee is entitled to the highest level of protection under premises liability law. [Citations omitted.]

For purposes of determining a landowner's duty in a premises liability case, the entrant's status as an invitee, licensee, or trespasser on the land is considered "at the time of injury." *Burnett v Bruner*, 247 Mich App 365, 368; 636 NW2d 773 (2001). Typically, invitee status is conferred on individuals entering the property of another for business purposes, meaning there must be some prospect of pecuniary gain prompting the landowner to extend an invitation onto the premises. *Stitt*, 462 Mich at 597, 603-604. For instance, a tenant is considered an invitee of the landlord. *Benton*, 270 Mich App at 440.

However, depending on the circumstances, an individual's status as an invitee on the property is subject to change during the visit to the premises if the individual exceeds the scope of his or her invitation. See 2 Restatement Torts, 2d, § 332, comment *l*, pp 181-183. An invitee may, for example, exceed the scope of an invitation when he or she departs from the location encompassed by the invitation, or when he or she stays on the

property beyond the time permitted by the invitation. *Id*. See also *Carreras v Honeggers & Co, Inc*, 68 Mich App 716, 727-728; 244 NW2d 10 (1976). In *Constantineau v DCI Food Equip, Inc*, 195 Mich App 511, 514-515; 491 NW2d 262 (1992), this Court recognized that a visitor's status may change while on the property, and we offered two examples, drawn from long-established caselaw, in which an individual lost invitee status by exceeding the scope of an invitation. This Court summarized those cases as follows:

> In *Bennett v Butterfield*, 112 Mich 96; 70 NW 410 (1897), the plaintiff was injured while he was a customer in the defendant's store. The plaintiff claimed that he was invited into a place of danger without warning and without proper guards at the entrance to protect him. The evidence, however, established that the plaintiff attempted to enter an elevator without invitation or permission. Consequently, the Supreme Court held that the plaintiff alone was "responsible for the accident and the injury, and [could] not recover." *Id*. at 98. Similarly, in *Hutchinson v Cleveland-Cliffs Iron Co*, 141 Mich 346; 104 NW 698 (1905), no duty was owed to an injured worker who had not been invited to enter that portion of the mill where the injury occurred. [*Constantineau*, 195 Mich App at 515 (alteration in original).]

In the same way, in *Bedell v Berkey*, 76 Mich 435, 439-440; 43 NW 308 (1889), an individual who entered a factory property to conduct business and was injured when he wandered into a storm room could not recover for the reason that "all persons who stray about other people's premises at their own will must look out for their own safety in such places." See also *Buhalis*, 296 Mich App at 697 (holding landowner not liable when the visitor to the property strayed from the safe means of ingress and egress provided). Stated more broadly, it has long been recognized that an invitee is expected to use a landowner's premises in the "usual, ordinary, and

customary way," and that when an invitee fails to do so, he or she becomes, at best, a mere licensee. *Armstrong v Medbury*, 67 Mich 250, 253-254; 34 NW 566 (1887) (quotation marks omitted).

In this regard, apart from geographical or temporal constraints on an invitation, an invitee might also exceed the scope of an invitation, and consequently lose invitee status, by acting in a manner inconsistent with the scope and purpose of the invitation. See 62 Am Jur 2d, Premises Liability, § 107, p 484 ("Deviation from an invitation to enter onto the possessor's land occurs when the entrant acts in a manner inconsistent with the scope of an express or implied invitation, thereby demonstrating a change in relationship between that person and the possessor."). In other words, because an invitee is expected to use a landowner's premises in the usual, ordinary, and customary way, he or she loses invitee status by failing to act in this manner. See *Bird v Clover Leaf-Harris Dairy*, 102 Utah 330; 125 P2d 797 (1942); *St Mary's Med Ctr of Evansville, Inc v Loomis*, 783 NE2d 274, 282 (Ind Ct App, 2002). By way of illustration, caselaw from other jurisdictions is replete with instructive examples of ways in which individuals have lost invitee status by acting outside the usual, ordinary, and customary way on the landowner's property. See, e.g., *Hogate v American Golf Corp*, 97 SW3d 44, 48 (Mo Ct App, 2002) (finding the defendant had issued a general invitation to the public to use a golf course to walk, drive carts, and play golf; therefore, an individual who was injured while riding a bike on a fairway had exceeded the scope of his invitation); *Bird*, 102 Utah 330 (holding an individual who failed to park his car in the usual, ordinary, and customary way contemplated for the public was a licensee); *Gavin v O'Connor*, 99 NJL 162, 163-166; 122 A 842 (1923) (determining that a child killed while swinging on a

clothesline had exceeded the scope of his invitation to play in the yard by putting the clothesline to an unintended use); *Brunengraber v Firestone Tire & Rubber Co*, 214 F Supp 420, 422-423 (SD NY, 1963) (concluding a customer who entered a mechanic's garage as an invitee but remained in the garage for the private purpose of cleaning out the trunk of his car was, at best, a licensee).[3] Consistent with Michigan law regarding the scope of an invitee's invitation, these cases reinforce the notion that a landowner's duty to an invitee is shaped by the invitation extended, and an individual exceeding the scope of that invitation, whether by geography, time, or activity, is not entitled to the standard of care that a landowner owes an invitee.

Turning to the present facts, plaintiff clearly qualified as an invitee when he initially entered the premises for the purpose of working for Ferguson Enterprises and fulfilling his role as a project manager in the pricing center. As an invitee to the property, his invitation would include ingress and egress to the building. See 2 Restatement Torts, 2d, § 332, comment *l*, pp 182-183. Therefore, plaintiff could, as an invitee, enter the warehouse and carryout his business function there in the form of his work for Ferguson Enterprises.

However, when plaintiff undertook the unsolicited act of clearing icicles from the building—a task unre-

---

[3] See also *Sims v Giles*, 343 SC 708, 733; 541 SE2d 857 (SC App, 2001) (recognizing that, in some cases, a worker may lose invitee status when the worker exceeds the scope of the work); *Barry v Southern Pac Co*, 64 Ariz 116, 121-123; 166 P2d 825 (1946) (concluding an individual lying on the roadbed between the rails of a railroad track was a trespasser even if someone walking in that location might have been a licensee); *Page v Town of Newbury*, 113 Vt 336, 340; 34 A2d 218 (1943) ("[O]ne entering [the lands of another] may become a trespasser by committing active and positive acts not included in the terms of his license or authority to enter . . . .").

lated to his function at Ferguson Enterprises and to his purpose for being on the property—plaintiff lost his status as an invitee and became, at best, a mere licensee.[4] That is, in renting out the warehouse property, defendants held it open to the use of Ferguson Enterprises and its employees engaged in conducting business for Ferguson Enterprises. In contrast, defendants employed maintenance personnel to ensure proper maintenance of the building, including tasks such as snow removal and issues related to roof repairs. There is no indication that defendants extended an invitation, either express or implied, to Ferguson Enterprises or its employees to tackle the task of removing large, potentially dangerous icicles from the building. By doing so of his own volition, plaintiff used the property in a manner that cannot be considered usual, ordinary, and customary, and he thereby exceeded the scope of his invitation, becoming, at best, a licensee.[5] Stated differently, the question in this case is not

---

[4] See 2 Restatement Torts, 2d, § 332, comment *b*, p 177 ("[A] volunteer helper who comes upon land to aid in getting a truck out of a mudhole, or in putting out a fire, without being asked to do so, is a licensee, but not an invitee.").

[5] The dissent suggests that plaintiff's attempt to remove icicles from the roof may be considered part of an ordinary departure from the premises because the icicles impeded his access to the building and defendants neither implicitly nor explicitly forbade plaintiff's removal of the icicles. We respectfully disagree. While plaintiff viewed the icicles as a potential safety hazard, we see nothing in the record that indicates the icicles in fact prevented plaintiff from entering or exiting the building through the entry in question. Moreover, as the dissent acknowledges, there were other means of ingress and egress made available to plaintiff, further belying the suggestion that entering or exiting the building necessitated plaintiff's unsolicited removal of the icicles. In short, this is not a situation in which an invitee was trapped in a building, forced to knock down icicles to gain his escape. Rather, unsolicited, plaintiff voluntarily took it upon himself to correct what he perceived as a safety hazard on the property. In our view, the mere fact that plaintiff perceived the icicles as a safety hazard, and voluntarily chose to personally

whether defendants provided reasonably safe entry into the building for invitees using the property in an ordinary way for its proper purpose; the question is whether defendants can be held liable when, of his own accord and unbeknownst to defendants, plaintiff took it upon himself to commence the apparently dangerous task of removing icicles from the building, thereby performing an act outside the scope of his business purpose for visiting the property and his invitation to be on the premises.

Given the change in plaintiff's status as an entrant to the property, to ascertain what duty defendants owed plaintiff, we consider the duty owed by a landowner to a licensee, which is, as noted, "a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved." *Stitt*, 462 Mich at 596. See also *Kosmalski v St John's Lutheran Church*, 261 Mich App 56, 65; 680 NW2d 50 (2004) ("[T]he law in Michigan requires that a landowner owes a licensee a duty to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the hidden danger involves an unreasonable risk of harm and the licensee does not know or have reason to know of the hidden danger and the risk involved."). "The landowner owes no duty of inspection or affirmative care to make the premises safe for the licensee's visit." *Stitt*, 462 Mich at 596.

Accordingly, in the present case, given that plaintiff qualifies as a licensee, defendants owed him no duty of inspection and no affirmative duty of care to make the premises safe for his activities. See *id*. The only potential duty defendants owed to plaintiff would be to warn him of

---

undertake removal of the icicles, does not transform his conduct into action sanctioned by defendants' invitation to use the property.

a hidden danger on the property involving an unreasonable risk of harm, and such duty only exists provided that plaintiff did not know or have reason to know of the danger involved. See *id.*; *Kosmalski*, 261 Mich App at 65. Plainly, in this case, plaintiff knew of the danger posed by falling snow and ice, given that he had heard ice and snow falling from the roof, and he specifically described the process of pushing icicles as "dangerous." Moreover, aside from the fact that he actually knew of the risks, he had ample reason to know of the danger, given that there were massive icicles and large ice chunks on the ground and that he had heard snow and ice fall from the roof. In these circumstances, he had every reason to recognize that snow and ice falling from the roof posed a hazard to those below, particularly if one undertook the removal of icicles on the roof. Because plaintiff knew or had reason to know of the danger posed by falling snow and ice when he undertook the clearing of the icicles, defendants owed no duty, either to warn him of the hazard or to safeguard him from the condition. See *Stitt*, 462 Mich at 596. Therefore, no material question of fact remains regarding defendants' duty to plaintiff, and the trial court properly granted summary disposition to defendants.

Affirmed.

WHITBECK, J. (*concurring*). I concur with the lead opinion. I write separately solely to address our dissenting colleague's analysis of the open and obvious danger doctrine.

I first note that we all apparently agree that the accumulation of snow and ice on the roof was open and obvious[1] and that any hazard that this accumulation

---

[1] See our dissenting colleague's statement that "[t]he question is a close one, but I believe the trial court correctly found that *in this particular case*, the danger was open and obvious."

created was effectively avoidable because there was another usable exit.[2] Setting aside the question of plaintiff's[3] status as an invitee, our dissenting colleague would reverse on the unreasonably dangerous prong of the premises liability paradigm. Briefly summarized, that paradigm is that there is no liability if the hazard was open and obvious, with the two exceptions that liability may still attach if the hazard was unreasonably dangerous *or* if the hazard was effectively unavoidable.[4] Therefore, if we were to consider the snow and ice accumulation on the roof as a latent defect about which defendants should have warned plaintiff, we must then deal with the exception to the open and obvious danger doctrine for unreasonably dangerous hazards.

In *Lugo v Ameritech Corp, Inc,* the Michigan Supreme Court gave the example of an unguarded 30-foot-deep pit to illustrate when a condition might be unreasonably dangerous:

> [W]ith regard to open and obvious dangers, the critical question is whether there is evidence that creates a genuine issue of material fact regarding whether there are truly "special aspects" of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm, i.e., whether the "special aspect" of the condition should prevail in imposing liability upon the defendant or the openness and obviousness of the condition should prevail in barring liability.

---

[2] See our dissenting colleague's statement that "[h]owever, the evidence was that employees could have used an alternative door to the building; doing so would merely have been inconvenient and contrary to their established and expected practice. *Consequently, the danger was not effectively unavoidable.*" (Emphasis added.)

[3] For ease of reference, like the lead opinion, this opinion refers to plaintiff Gordon J. Bredow in the singular because his wife's claim is derivative.

[4] See, generally, *Lugo v Ameritech Corp, Inc,* 464 Mich 512; 629 NW2d 384 (2001).

An illustration of such a situation might involve, for example, a commercial building with only one exit for the general public where the floor is covered with standing water. While the condition is open and obvious, a customer wishing to exit the store must leave the store through the water. In other words, the open and obvious condition is effectively unavoidable. Similarly, an open and obvious condition might be unreasonably dangerous because of special aspects that impose an unreasonably high risk of severe harm. To use another example, consider an unguarded thirty foot deep pit in the middle of a parking lot. The condition might well be open and obvious, and one would likely be capable of avoiding the danger. Nevertheless, this situation would present such a substantial risk of death or severe injury to one who fell in the pit that it would be unreasonably dangerous to maintain the condition, at least absent reasonable warnings or other remedial measures being taken. In sum, only those special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided will serve to remove that condition from the open and obvious danger doctrine.[5]

Central to the analysis of both our dissenting colleague and the Supreme Court is the proverbial 30-foot-deep unguarded pit. According to Supreme Court's formulation, such a pit would be unreasonably dangerous. But to whom? I suggest that the Supreme Court had in mind the severe nature of the danger to an innocent invitee on the land who might fall by misadventure into the pit. It follows, then, that the dangerous condition of the land must cause a plaintiff's injury.

The Supreme Court's hypothetical 30-foot-deep pit is not even remotely similar to the situation we have here. It was certainly conceivable that ice or snow might fall off the building; indeed plaintiff testified that sometimes chunks a foot in diameter would fall off the

---

[5] *Id.* at 517-519.

building. But the only complaints were that they were loud when they fell. What would not be typically expected is that a whole 12- to 14-foot section of snow, ice, and debris will fall off a roof without reason.

Plaintiff here was certainly not an innocent plaintiff who was simply injured by misadventure. As the lead opinion points out, by his unsolicited actions, plaintiff caused the danger and therefore caused his own injury. How, then, can we say it was the accumulation of ice and snow on the roof that was, without more, unreasonably dangerous? And how, then, can we say it was the dangerous condition—presuming that it was dangerous—that caused plaintiff's injury when plaintiff's own actions directly led to that injury?

By analogy, consider a person—let's call him the Gratuitous Volunteer—who sees and climbs down into a 30-foot-deep earthen pit and then proceeds, entirely on his own, to shovel away at one of the earthen walls to make a ramp back up. But, not surprisingly, the shoveling weakens the wall and it collapses, injuring the Gratuitous Volunteer. Clearly, before the Gratuitous Volunteer began shoveling, the wall was stable and safe and the pit was not unreasonably dangerous to him or to anyone else similarly situated. It was purely and simply the Gratuitous Volunteer's own actions that caused the pit to become dangerous at all, much less unreasonably dangerous. The Gratuitous Volunteer's actions, not the condition of the land, caused his injury. The same is true of plaintiff here.

I also note our dissenting colleague's statement that she "would also decline to address defendants' alternative argument that plaintiff's injury is his own fault: defendants appear to have raised this for the first time on appeal, and I would leave it up to the parties to address on remand." The record belies this assertion.

At the hearing below, the trial court discussed the causation issue and declared that "plaintiff then progressed to using his shovel to knock away snow and ice hanging from the roof. This, in turn, caused a large portion of snow and ice to come crashing down onto the plaintiff and knocking him to the ground." Defendants raised this issue in their brief on appeal as an alternative ground for affirmance. Plaintiff's counsel at oral argument conceded that this issue was raised below. Whether counsel's concession following my direct question on this point was wise is irrelevant; it remains a concession. The issue was raised before and discussed by the trial court and raised by defendants on appeal. If we are to consider at all our dissenting colleague's analysis regarding whether there was an unreasonably dangerous condition, we must consider it in light of this issue.

RONAYNE KRAUSE, P.J. (*dissenting*). I respectfully dissent because I cannot agree with the lead opinion's conclusion that plaintiff[1] lost his invitee status merely because he departed from his formal job responsibilities and because I believe the trial court erred by failing to consider whether the hazard that injured plaintiff was unreasonably dangerous.

As the lead opinion notes, the parties have at no time contested plaintiff's status as an invitee on defendants' premises. I agree with the lead opinion that the courts are not obligated to comply with parties' stipulations or statements of law. See *Marbury v Madison*, 5 US (1 Cranch) 137, 177; 2 L Ed 60 (1803); *Rice v Ruddiman*, 10 Mich 125, 138 (1862); *In re Finlay Estate*, 430 Mich

---

[1] For ease of reference, like the lead and concurring opinions, this opinion refers to plaintiff Gordon J. Bredow in the singular given that plaintiff Suzanne Bredow's sole claim is derivative.

590, 595-596; 424 NW2d 272 (1988). Of course, the parties themselves *are* bound to their own stipulations, whether to facts or to law, and may not subsequently raise them as errors on appeal. *Chapdelaine v Sochocki*, 247 Mich App 167, 177; 635 NW2d 339 (2001). Nonetheless, I agree with the lead opinion that the parties appear to have been acting under an assumption, rather than a formal stipulation, that plaintiff was an invitee at the time of his injury. See *Ortega v Lenderink*, 382 Mich 218, 222-223; 169 NW2d 470 (1969). It is not improper for this Court to correct a misapprehension of law under which the parties before it may be operating, I disagree that any such misapprehension existed here.[2]

I further agree with the lead opinion's recitation of the general law governing the standard of care owed by landlords to various classes of individuals on the land and the general definitions of licensees and invitees. We all agree, at least, that plaintiff was an invitee when he initially entered upon defendant's premises. I take no exception to the general principle that an invitee *can* outstay his or her welcome on any given premises and thereby become a licensee or trespasser. However, I do not conclude that plaintiff did so here. The lead opinion cites a number of cases in which invitees became mere licensees or trespassers, but all of those cases have one curious factual commonality: the plaintiffs all either did something they were not allowed to do or went somewhere they were not allowed to go. *Bedel v Berkey*, 76 Mich 435, 439-440; 43 NW 308 (1889); *Bennett v Butterfield*, 112 Mich 96, 96-98; 70 NW 410 (1897); *Hutchinson v Cleveland-Cliffs Iron Co*, 141 Mich 346, 347-349; 104 NW 698 (1905). It makes obvious sense for an

---

[2] Similarly, I note that plaintiff never formally conceded that this action sounds in premises liability, but I agree entirely with the lead opinion and the trial court that it does.

invitee to forfeit that status upon violating stated or readily apparent limitations on the scope of their invitation. I find nothing in the record indicating that plaintiff was told or should have been aware that he was not allowed to use the door or clear the access to the door.

The lead opinion further asserts that an invitee must make use of the premises in the " 'usual, ordinary, and customary way' " to maintain his or her status as an invitee, in reliance on *Armstrong v Medbury*, 67 Mich 250, 253; 34 NW 566 (1887), and an agglomeration of cases from outside Michigan.[3] The words do appear in

---

[3] Even if the out of state cases were binding, they would not support the lead opinion's conclusions. Briefly: in *Bird v Clover Leaf-Harris Dairy*, 102 Utah 330; 125 P2d 797 (1942), the plaintiff parked a car in a location that was actually and obviously impermissible; in *St Mary's Med Ctr of Evansville, Inc v Loomis*, 783 NE2d 274, 282-283 (Ind App, 2002), the plaintiff, who was not an employee, entered a room clearly marked " 'Employees Only' " but nevertheless *retained* his invitee status because similar employees regularly entered that room; in *Hogate v American Golf Corp*, 97 SW3d 44, 48 (Mo App, 2002), the plaintiff lost any invitee status by riding a bicycle onto premises that did not permit bicycling; in *Gavin v O'Connor*, 99 NJL 162, 163-166; 122 A 842 (1923), the plaintiff lost any invitee status by using a clothesline for the purpose of swinging on it, contrary to its obvious intended purpose; in *Brunengraber v Firestone Tire & Rubber Co*, 214 F Supp 420, 422-423 (SD NY, 1963), the plaintiff was an invitee when he entered an area customers such as himself were not to enter because the defendant's manager requested he do so, but he lost that status by remaining in the area beyond the scope of the request; in *Sims v Giles*, 343 SC 708, 733; 541 SE2d 857 (SC App, 2001), the court discussed a worker who lost his invitee status on the premises by leaving the location where he was supposed to be working; in *Barry v Southern Pac Co*, 64 Ariz 116, 121-123; 166 P2d 825 (1946), an intoxicated and unconscious individual sleeping on a railroad track was a trespasser notwithstanding whatever pedestrian use might ordinarily have been made of the railroad's right-of-way; and in *Page v Town of Newbury*, 113 Vt 336, 340; 34 A2d 218 (1943), as the majority notes, the Court explained that "one entering [the lands of another] may become a trespasser by committing active and positive acts not included in the terms of his license or authority to enter . . . ." In other words, all of these

*Armstrong*, but in full context, the Court approved a jury instruction to have been given in its entirety as follows:

> The plaintiff was bound to leave defendant's premises by the usual, ordinary, and customary way in which the premises are and have been departed from, provided the same be safe and in good condition; and if for his own convenience, or other reason (than defect in the usual place of departure), he leaves such way, he becomes at best a licensee, and cannot recover for injuries from a defect outside of said way, unless it was substantially adjacent to such way, and in this case the defect was not so adjacent. [(*Armstrong*, 67 Mich at 253) (quotation marks omitted).]

The situation at bar is the opposite: plaintiff *was* in fact attempting to depart from the premises in the normal and customary manner, but was impeded by an alleged defect *within* that way and was—albeit perhaps incautiously—attempting to rectify the defect. Again, plaintiff may not be able to recover for his injuries, but the fact that he was attempting to remove what he apparently believed to be a hazard to his transit hardly seems like a frolic and detour.

The lead opinion also takes out of context a quotation from *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 697; 822 NW2d 254 (2012), regarding persons straying from obvious paths of safety; in that case, this Court never held that the plaintiff ceased to be an invitee, but rather that the defendant had satisfied the duty of care under the circumstances of the case. Again, plaintiff was merely trying to go home via the normal and customary route that all such employ-

---

cases continue to stand merely for the reasonable proposition that an invitee may lose that status by doing something explicitly or implicitly *impermissible* on the premises.

ees were expected to, and did, take.[4] Likewise, the fact that plaintiff was doing something unnecessary to his job makes him no different from, say, any employee cleaning the snow off his or her car in an employer's parking lot after work in order to go home. If such an employee were to slip and fall on ice while doing so, it is of course highly unlikely that the employee could recover in Michigan. However, that preclusion would not be because the employee had ceased engaging in acts that directly benefitted the employer and was instead attempting to leave the premises, but rather due to a probable preclusive application of the open and obvious danger doctrine.

I find the lead opinion's expansion of the rules governing the loss of invitee status grossly unwarranted and inappropriate. Plaintiff was apparently just trying to go home and make the way to doing so safe. Furthermore, there was evidence that he did so in accordance with the expectations of his employer. He did nothing and went nowhere that was implicitly or explicitly disallowed by the premises owner. Finding that he lost his status as an invitee under the circumstances works an unprecedented and unsupported restriction on the nature of what constitutes an invitee.

Further, punishing an employee for attempting to abate a danger at his workplace is bad public policy. Plaintiff was attempting to remove a potential injurious hazard from the main entrance of his workplace to allow for fellow employees or other invitees to enter or exit without the risk of harm. This is not a situation in

---

[4] As I will discuss, a safer route existed that plaintiff could have taken, which has implications under the open and obvious danger doctrine. However, that alternative route was neither expected nor normal for employees to take. I disagree with the lead opinion about the extent to which the record evidence shows plaintiff's expected and normal egress from the building to have been safe.

which an individual willingly puts himself in harm's way by attempting to aid another on land over which he has no ownership or responsibility. Plaintiff was at work and attempted to protect not only himself, but also his workplace, fellow employees, and any other invitees. While an employee should not attempt to remedy any hazard, such as the hypothetical pit in *Lugo*, other conditions, such as snow and ice accumulation in Michigan, are common. It would be unreasonable to punish an employee if he got to work first and decided to shovel the sidewalk. If the employee is not allowed to act on his or her desire to protect others, then a potential hazard remains on the land that could cause injuries to people and a lawsuit for the employer. Determining that, regardless of the reason, any employee must be punished for attempting to remedy any potential hazard at his or her workplace, which consequently deters employees from removing those hazards, creates greater dangers for invitees and the employer, and therefore is bad public policy.

Defendants are required to make reasonable efforts to protect the safety of those on the property, although not to the extent of guaranteeing that safety. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). However, any hazard that is "open and obvious," meaning "it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection," is generally left to the invitee to avoid on his or her own and is not part of the landowner's duty. *Id.* at 460-461. However, open and obvious dangers may impose a duty on the landowner if the danger has "special aspects" that pose an unreasonable risk. *Id.* at 462. Determining whether a danger is open and obvious requires an objective analysis based on the objective condition of the property. *Id.* at 461.

Our Supreme Court has held that any icy roof in the winter posed an open and obvious danger because anyone *on* the roof would immediately be aware that an icy roof is slippery. *Perkoviq v Delcor Homes—Lake Shore Pointe, Ltd*, 466 Mich 11, 16-18; 643 NW2d 212 (2002). Because the Court focused on the slippery "condition of the roof," *id.* at 18-19, *Perkoviq* is just another slip-and-fall case, remarkable because of the unusual surface involved, however, irrelevant to the instant situation. It is, in fact, obvious that snow and ice on a sloped surface would pose a slip-and-fall hazard to a person traversing that surface. That does not, ipso facto, establish whether it is obviously dangerous to anyone not presently attempting to navigate the surface. Although I tend to agree with defendants that any Michigan resident would be aware that snow and ice tend to accumulate on roofs and along gutters, the dangerousness thereof is not necessarily so obvious. To the contrary, snow is generally regarded as soft and harmless, save perhaps the danger its weight might pose to the roof structure itself. Average Michigan residents of ordinary intelligence would be expected to appreciate that a twenty-foot icicle would be dangerous, but it was not the icicle here that injured plaintiff.

I would not hold that the danger of snow and ice falling from a rooftop and thereby causing injury is open and obvious per se. However, notwithstanding the fact that the standard for openness and obviousness is objective, it calls for consideration of what a reasonable person would have been expected to discover on casual inspection *from the plaintiff's position. Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 479; 760 NW2d 287 (2008). In other words, it is not a purely academic inquiry, divorced from the unique context of any particular case.

The trial court, rather than engaging in a rote application of slip-and-fall cases to the instant situation, properly concluded that other objective circumstances present at the scene would have suggested to an average person of ordinary circumstances that the roof was actively dropping dangerous ice and snow onto the ground, so there was likely "more where that came from," and that anything else on the roof would likely be precarious. Consequently, it would be a matter of common knowledge that knocking down an icicle could destabilize any other accumulation present. The evidence of the large and heavy ice chunks on the ground would have suggested that there was indeed serious danger associated with being underneath the roof, in the path of more such debris. The question is a close one, but I believe the trial court correctly found that *in this particular case*, the danger was open and obvious.

Even if a hazard is open and obvious, a premises possessor may nevertheless owe a duty to an invitee to protect the invitee from "unreasonable" risks of harm. *Hoffner*, 492 Mich at 461. The "special aspects" exception must be construed narrowly, and special aspects will only be found under exceptional and extreme circumstances. *Id*. at 462. The two special aspects explicitly discussed by our Supreme Court are dangers that are "effectively unavoidable" or that "impose an unreasonably high risk of severe harm." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 518; 629 NW2d 384 (2001). An example of the latter is "an unguarded thirty foot deep pit in the middle of a parking lot" that may be avoidable but "would present such a substantial risk of death or severe injury to one who fell in the pit that it would be unreasonably dangerous to maintain the condition, at least absent reasonable warnings or other remedial measures being taken." *Id*. Therefore, the degree of potential harm alone "may, in some unusual

circumstances, be the key factor that makes such a condition unreasonably dangerous." *Id.* at 518 n 2. However, courts should not find such extreme dangers merely because some severe harm is imaginable or because some severe harm actually occurred. *Id.*

Plaintiff argues that the trial court erred by finding that the danger of falling ice and snow here was not effectively unavoidable. I disagree. If a plaintiff has a choice to decline to confront the danger, it is not "effectively unavoidable." *Hoffner*, 492 Mich at 468-469. Plaintiff contends that he needed to clear the debris and icicles in order to exit the building. If plaintiff had, in fact, actually been trapped, the condition would essentially by definition be effectively unavoidable. See *id.* at 473. However, the evidence was that employees could have used an alternative door to the building; doing so would merely have been inconvenient and contrary to their established and expected practice.[5] Consequently, the danger was not effectively unavoidable. Plaintiff makes much of the fact that he was attempting to abate a danger to others, but his motives, while noble, are simply not relevant to whether a condition is objectively effectively unavoidable.

Plaintiff also argues that the trial court erred by failing to find that the hazard was unreasonably dangerous. I agree that the trial court erred by failing to address the possibility. A condition that poses an unreasonably high risk of severe harm is an *alternative* special aspect. The thirty-foot pit discussed by our Supreme Court in *Lugo* would all but guarantee serious

---

[5] It would appear that if plaintiff had in fact availed himself of the alternative, and ordinarily unused, egress from the building, the majority would find that he would have lost his invitee status in any event by departing from the normal and customary egress route.

injury to anyone who fell into it. Therefore, it would possess a special aspect, potentially subjecting the premises owner to liability even if the pit were open and obvious. Defendants' argument here that the situation did not pose much of a risk of harm because no one before plaintiff was harmed is inapposite. It is a variant on the a priori argument rejected by our Supreme Court in *Lugo*: whether any sort of injury, severe or otherwise, *actually* occurred is of little relevance to the *degree* of potential danger. The absence of any special aspects found in *Perkoviq* is, again, irrelevant: the hazard posed by ice and snow accumulation on roof to a person on that roof is fundamentally different from the hazard posed to someone not on that roof.

As with the question whether accumulated snow and ice on a roof is open and obvious, I would not hold that such accumulation is or is not unreasonably dangerous per se. The unique details of the specific situation are critical. In light of the trial court's failure to address this question, I would likewise decline to do so and instead remand for the parties to address this before the trial court. I would also decline to address defendants' alternative argument that plaintiff's injury is his own fault: defendants appear to have raised this for the first time on appeal, and I would leave it up to the parties to address on remand.